13887

TUTEN v. BOWDEN *ET AL.*

(175 S. E., 510)

*Mr. George Warren,* for appellant,

*Messrs. J. R. Bowden* and *J. W. Manuel,* for respondent,

July 16, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On February 15, 1916, R. O. Bowden, one of the defendants in this case, executed in favor of the plaintiff the following promissory note: "On February 15, 1917, after date I promise to pay to the order of Mrs. Harriet Tuten $2,500.00 Twenty-five Hundred and No/100 Dollars. Value received. Payable at the H. L. & Ex. Bank of Hampton, S. C. To bear interest from date at the rate of eight per cent. per annum. The makers and endorsers hereof, hereby waive demand and protest, and agree to pay all costs of collection, including 10 per cent. attorneys' fees, if not paid when due. *The endorsers hereof hereby further waive any benefit of law which might accrue to them by reason of any extension of time granted to the principal."* (Italics added.)

Before its delivery to Mrs. Tuten, the note was indorsed by Paul A. Bowden, the respondent in this appeal. The debt was not paid when due but, apparently by some arrangement between the holder and the principal, the note was allowed to run from time to time, the maker paying the interest in monthly installments until March, 1933. There-

after, being advised that no further payments would be made, Mrs. Tuten brought this action for the collection of the debt. R. O. Bowden did not resist the suit, but Paul A. Bowden answered the complaint and set up the following defenses: (a) That the words "any extension" contained in the note meant only one extension from the date of maturity, and that the plaintiff, in extending the time of payment from month to month, without the consent of this defendant, discharged and released him as indorser from all liability; (b) that plaintiff's cause of action was barred by the Statute of Limitations on account of the fact that such cause of action did not under defendant's indorsement accrue within six years before the commencement of this suit; and (c) that R. O. Bowden delivered to plaintiff as security for the payment of the note $2,500.00 worth of bank stock on which many dividends were paid, and, while Mrs. Tuten negligently failed to collect these dividends from R. O. Bowden who actually received them, as between this defendant and her, the amount of such dividends should be credited as payments on the note. The plaintiff replied, denying the allegations of the answer and demanding strict proof thereof.

The case was tried before his Honor, Judge Shipp, who directed a verdict against the defendant R. O. Bowden, the maker of the note, for the full amount claimed, but directed a verdict in favor of Paul A. Bowden, the indorser. The appellant, plaintiff below, imputes error to the trial Court in holding that the words used in the note, "any extension of time," meant only one extension " * * * this being the basis of the Court's ruling in directing a verdict for Paul A. Bowden."

Section 6871 of the Code of 1932, which is a portion of the Negotiable Instruments Law, reads in part as follows: "A person secondarily liable on the instrument is discharged: * * * (6) By any agreement binding upon the holder to extend the time of payment, or to postpone the

holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The appellant contends that, "even if the acceptance by Mrs. Tuten of the interest payments monthly from the date of the note to the first of March, 1933, constitutes some semblance of acquiescence in extension to the extent of constituting some evidence of an agreement, such as is mentioned in the Negotiable Instruments Statute," the right of recourse against Paul A. Bowden is expressly reserved by that portion of the note which we have italicized.

It seems that the exact question presented has not been decided by this Court, and the authorities, or most of them, cited by counsel, are helpful only in a general way. Aside from two decisions of other jurisdictions, one of which supports the view taken by the Circuit Judge and the other holding to the contrary, we find no case directly in point.

In 2 Am. & Eng. Ency. of Law (2d Ed.), 414, the writer says: "The word 'any' is frequently used in the sense of 'all' or 'every,' and when thus used it has a very comprehensive meaning. But, like all other general words, its meaning is frequently restrained and limited by the context or subject matter." See, also 3 C. J., 320, where will be found an elaborate and interesting treatment of the uses of this word.

It has been held that the word "any" has several meanings according to the subject which it qualifies *(Stiles v. Freeholders of Union County,* 50 N. J. Law, 9, 11 A., 143) ; that it may be joined to a substantive either in the singular or plural number, but, where it is joined to a substantive in the plural, it has, in strict construction, a plural signification *(Com. v. Messinger,* 1 Bin. (Pa.), 273, 2 Am. Dec., 441; that *any* in the phrase "any applicant" as used in a statute, being indeterminate in application, is unquestionably used in the plural *(White v. Furgeson,* 29 Ind. App., 144, 64 N. E., 49) ; that the expression "for the foregoing pur-

poses, or any of them," means, in effect, "for the foregoing purposes, and every of them" (*Davidson v. Dallas,* 8 Cal., 239) ; and that the phrase, "without any incumbrances," means no incumbrances (*Hershiser v. Ward,* 29 Nev., 228, 87 P., 171).

On the other hand, it has been held that an offer to buy at *any time* after a certain date did not import perpetuity, but entitled the party to a reasonable time only (*Park v. Whitney,* 148 Mass., 278, 19 N. E., 161) ; that the words in a contract which provided that a city might at *any time* lay out a certain street across certain lands should be construed to mean a reasonable time (*Raynor v. Syracuse University,* 35 Misc., 83, 71 N. Y. S., 293) ; that, "where the right to remove property 'at any time' has been expressly reserved in the lease, such a right is not unlimited as to time, but is limited to a reasonable time after the expiration of the lease. *Shellar v. Shivers,* 171 Pa., 569, 33 A., 95" (*Perry v. Acme Oil Company,* 44 Ind. App., 207, 88 N. E., 859, 861) ; and that the word "any" used as an adjective means "one out of several or many," implying selection. *New Haven Young Men's Institute v. City of New Haven,* 60 Conn., 32, 22 A., 447.

Section 7 of Article 8 of the Constitution of 1868 provided that "every person entitled to vote at any election shall be eligible to any office which now is or hereafter shall be elective by the people," etc. In *State v. Buttz,* 9 S. C., 156, it was contended that it necessarily followed from this provision of the Constitution that, unless the person in question came under some one or more of the exceptions named in that instrument, his right to hold any office could not be questioned, and the fact that he held one office would be no bar to his holding another office. The Court said: "One defect in this argument is that it assumes that the word 'any,' in the seventh section of article 8, means all, every, or any two or more, or something equivalent thereto, and that when the Constitution declares that a person possessing

certain qualifications is eligible to 'any' office it means that he is eligible to all or at least any two or more offices at the same time. This construction does not seem warranted by any rule that we have been enabled to apply."

In *Trumbo v. Finley*, 18 S. C., 305, the Court construed the words of a statute, "at any time or sitting," as follows: "It is true the word 'any' is indefinite as to the particular thing referred to, but it is singular, and in connection with a name singular means one of the particular things indicated. In the statute it qualifies both 'time' and 'sitting,' and is equivalent to the expression 'at any one time or sitting.' "

In *Rochester Sav. Bank v. Chick,* 64 N. H., 410, 13 A., 872, cited by the respondent, the note upon which action was brought contained the following stipulation: "All the signers agree to be holden should the time of payment be extended." The Court said: "The time of payment fixed upon in the note is six months, and the agreement 'to be holden should the time of payment be extended' naturally, and by the ordinary force of language and taken in connection with the first part of the note, means a reasonable extension for a definite time, and not a series of extensions indefinite in number and endless in repetition." It will be observed that in that case the word "any" is not used in the stipulation contained in the note.

*Oyler v. McMurray,* 7 Ind. App., 645, 34 N. E., 1004, relied on by the respondent, seems to be directly in point. In that case the note sued upon provided that "the drawers and indorsers severally waive * * * all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them, or either of them." The Court said: "The term 'any extension' is used in the singular sense. It was not intended for an indefinite number of extensions of the time of payment. When the appellee, at the end of one year from the date of the note, extended the time of payment until January 1, 1889, such extension was in accordance with the agreement of the par-

ties, as we have before stated, and all the parties, including appellant Oyler, were bound by it, and he was not thereby discharged. The agreement, however, contained in the stipulation in the note, was met and satisfied by that extension. The other extensions, or any of them, if made as alleged, had the effect of discharging him"—citing the *Chick case* apparently as authority for the holding.

The appellant in the case at bar relies upon and directs especial attention to *Winnebago County State Bank v. Hustel,* 119 Iowa, 115, 93 N. W. 70. The note sued upon in that case contained a stipulation that "the drawers and indorsers severally waive \* \* \* all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders to them, or either of them." As to whether this stipulation applied to more than one extension, the Court said: "There is nothing in the contention that but one extension of time was intended. The use of 'any' before 'extension' indicates that any one of an indefinite number was intended. \* \* \* If so, then more than one extension might be allowed, and the defenses to each were waived. In the connection found the word is analogous to 'every.' " It appears that the appellant in that case relied upon *Rochester Sav. Bank v. Chick, supra.* The Court, however, pointed out that the stipulation in the note in the *Chick case* and that contained in the note there sued upon were not the same, and said, "The case (*Rochester Sav. Bank v. Chick*) is authority for a like conclusion had 'any' in this note been omitted." While the case of *Winnebago County State Bank v. Hustel* was decided in 1903, *Oyler v. McMurray, supra,* decided ten years earlier, and in which the Indiana Court, as seen, took a different view, was not referred to in the opinion.

After mature deliberation and thought, the Court is inclined to the view that the Circuit Judge reached a correct conclusion. It is reasonably inferable from the testimony that the principal was given many extensions

of time for the payment of the note, by arrangement or agreement between him and the holder, over a period of sixteen years or more, and that the indorser knew nothing of such extensions, and did not consent to any of them, except as he was bound by the stipulation in the note. If the word "any," as used in such stipulation, is given the meaning contended for by the appellant, then the principal and the holder of the note, as has been pointed out in one case, could keep the surety liable at their pleasure, "and forever prevent his enforcing payment against the principal, or using the Statute of Limitations as a defense." We are impressed with the reasoning that such a construction of the stipulation, with such consequences, should not be adopted "without a clearly expressed intention to that effect in the agreement itself." Of course, if it appears from the language used that an indefinite number of extensions was intended, the indorser will not be heard to complain. However, as stated, such intention, to be gathered from the agreement, should appear with reasonable certainty. Furthermore, the provision of a contract which does not clearly express the intention of the parties, should be construed against the one for whose benefit it was inserted. For these reasons, we think that the word "any" was used, and was intended to be used, in the phrase, "any extension of time," in its limited or restricted sense. We therefore hold that one extension for a definite time did not discharge the indorser, but that extensions made thereafter, or any one of them, without his consent, operated to do so. This conclusion renders unnecessary a discussion of any other question presented by the appeal.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.